## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.:**

**JOSE MARTIN LLANOS and ERICA ISABEL LLANOS, individually, as parents and statutory heirs of TATIANA ISABEL LLANOS, deceased, and as next of kin; and**
**THE ESTATE OF TATIANA ISABEL LLANOS, by and through its duly appointed personal representative, JOSE MARTIN LLANOS,**

Plaintiffs,

V.

**RAUL JIAAN MOLINA, an individual;**

**CITY OF FOUNTAIN, a Colorado municipality;**

**ERIC MOORE, individually and in his official capacity as a Corporal of the Fountain Police Department;**

**BRETT FOUTS, individually and in his official capacity as an Officer of the Fountain Police Department;**

**ALAN L. SMITH, individually and in his official capacity as a Sergeant of the Fountain Police Department;**

**BRIAN ANTHONY CRISTIANI, individually and in his official capacity as a Detective Sergeant of the Fountain Police Department; and**

**TORI SMITH, also known as TORI SLATER, individually and in her official capacity as a Detective of the Fountain Police Department,**

Defendants.

1

_____

**FEDERAL COMPLAINT AND JURY DEMAND**

_____

Plaintiffs Jose Martin Llanos and Erica Isabel Llanos, individually, as parents and statutory heirs of Tatiana Isabel Llanos, deceased, and as next of kin, and the Estate of Tatiana Isabel Llanos, by and through its duly appointed personal representative, Jose Martin Llanos, by and through undersigned counsel, bring this Complaint against Defendants and allege as follows:

**PRELIMINARY STATEMENT AND NATURE OF THE ACTION**

1. The role of the parent to the child is to at all times be a guardian of life and dignity even when that life is extinguished. No parent ever expects to bury a child, no less in tragedy and amidst the denial of justice. Plaintiffs do not bring this action for pecuniary gain, aggrandizement, or even spite, but out of a final hope and demand that justice be done. Jose Martin Llanos and Erica Isabel Llanos (hereinafter "Mr. and Mrs. Llanos"), individually and as parents and next of kin of their daughter, Tatiana Isabel Llanos (hereinafter "Tatiana"), deceased, by and through their undersigned counsel, hereby file the instant complaint against Defendants Raul Jiaan Molina, City of Fountain, and individual officers of the Fountain Police Department, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, and for wrongful death under Colorado law.

2. Tatiana Isabel Llanos was born on December 5, 1999. She was a twenty-four-year-old woman of Puerto Rican and Argentine heritage, a dedicated professional working in

2

customer support, and a cherished daughter and sister. Her whole life was ahead of her. On the night of July 4, 2024, while the nation celebrated its independence, Tatiana's life was taken from her on Fountain Mesa Road in the City of Fountain, El Paso County, Colorado.

3. A twenty-four-year-old woman, Tatiana Isabel Llanos, sustained fatal blunt force head trauma on July 4, 2024, after exiting, falling, or being ejected from a moving vehicle operated by Defendant Raul Jiaan Molina on Fountain Mesa Road in Fountain, Colorado.

4. Plaintiffs allege that Defendant Molina operated the vehicle after consuming alcohol, while his driving privileges were suspended, while displaying fictitious Colorado license plates, while on active probation for a prior DUI conviction, and under circumstances that created an unreasonable risk of serious bodily injury or death to Tatiana.

5. Plaintiffs further allege that responding and investigating officers of the Fountain Police Department failed to conduct a constitutionally adequate response and investigation after Tatiana's fatal injuries, including by failing to conduct Standard Field Sobriety Tests, failing to promptly obtain critical evidence of impairment, failing to arrest or meaningfully investigate Molina despite obvious evidence of intoxication and unlawful driving, and closing the investigation without probable cause.

6. Plaintiffs recognize that a claim based solely on a failure to investigate, arrest, or prosecute is subject to substantial legal challenge. Plaintiffs therefore plead their federal claims based on the totality of Defendants' conduct, including affirmative decisions and actions that Plaintiffs allege increased vulnerability to danger, impaired access to accountability, treated Plaintiffs differently from similarly situated victims and families, and reflected municipal policies, customs, practices, failures of training, and ratification.

3

**7.** Plaintiffs bring federal claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, and state-law claims for wrongful death and related relief under Colorado law.

### JURISDICTION AND VENUE

**8.** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

**9.** This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as the federal claims.

**10.** Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Fountain, El Paso County, Colorado.

**11.** At all times relevant, Defendants Moore, Fouts, Alan L. Smith, Cristiani, and Tori Smith acted under color of state law within the meaning of 42 U.S.C. § 1983.

**12.** At all times relevant, Defendant City of Fountain acted through its police department, officers, employees, agents, policymakers, customs, practices, and policies.

### PARTIES

**13.** Plaintiff Jose Martin Llanos is the father of Tatiana Isabel Llanos, deceased. He brings this action individually, as a parent and statutory heir, and as next of kin of Tatiana Isabel Llanos.

4

14. Plaintiff Erica Isabel Llanos is the mother of Tatiana Isabel Llanos, deceased. She brings this action individually, as a parent and statutory heir, and as next of kin of Tatiana Isabel Llanos.

15. Plaintiff the Estate of Tatiana Isabel Llanos brings claims by and through its duly appointed personal representative, Jose Martin Llanos. To the extent a personal representative has not yet been appointed, Plaintiffs will seek appointment and amend this Complaint to identify the proper estate representative.

16. Defendant Raul Jiaan Molina is an individual residing in Colorado. At all relevant times, Defendant Molina operated the vehicle involved in the incident that caused or contributed to Tatiana's fatal injuries.

17. Defendant City of Fountain is a Colorado municipality. The City operates the Fountain Police Department and is a "person" subject to suit under 42 U.S.C. § 1983 for constitutional violations caused by its policies, customs, practices, failures of training or supervision, final policymaker decisions, or ratification.

18. Defendant Eric Moore was employed as a Corporal of the Fountain Police Department. At all relevant times, he acted under color of state law. He is sued in his individual and official capacities.

19. Defendant Brett Fouts was employed as an Officer of the Fountain Police Department. At all relevant times, he acted under color of state law. He is sued in his individual and official capacities.

**20.** Defendant Alan L. Smith was employed as a Sergeant of the Fountain Police Department and served as a patrol supervisor. At all relevant times, he acted under color of state law. He is sued in his individual and official capacities.

**21.** Defendant Brian Anthony Cristiani was employed as a Detective Sergeant of the Fountain Police Department and supervised aspects of the investigation into Tatiana's death. At all relevant times, he acted under color of state law. He is sued in his individual and official capacities.

**22.** Defendant Tori Smith, also known as Tori Slater, was employed as a Detective of the Fountain Police Department and served as the lead detective assigned to investigate Tatiana's death. At all relevant times, she acted under color of state law. She is sued in her individual and official capacities.

## FACTUAL ALLEGATIONS

**Tatiana Isabel Llanos**

**23.** Tatiana Isabel Llanos was born on December 5, 1999.

**24.** Tatiana was twenty-four years old at the time of her death.

**25.** Tatiana was the daughter of Plaintiffs Jose Martin Llanos and Erica Isabel Llanos and the sister of Sebastian Octavio Llanos.

**26.** Tatiana was of Puerto Rican and Argentine heritage, resided with her family, worked in customer support in the cable industry, and was a beloved daughter, sister, and member of her family.

**Defendant Molina's Conduct Before the Fatal Injury**

27. On July 4, 2024, Tatiana attended a holiday gathering at the home of Cassandra Brown.

28. At approximately 6:00 to 6:30 p.m., Defendant Molina contacted Tatiana by telephone and invited her to attend a gathering at the home of his mother, Erica Molina.

29. Tatiana later went to Erica Molina's residence.

30. At Erica Molina's residence, Defendant Molina and Tatiana consumed multiple shots of whiskey.

31. At approximately 10:00 p.m., Defendant Molina and Tatiana left Erica Molina's residence in Defendant Molina's white 2004 Suzuki XL7, VIN JS3TX92VX44104890.

32. At the time Defendant Molina operated the vehicle with Tatiana as his passenger, Defendant Molina had consumed alcohol and was impaired or under the influence of alcohol.

33. Defendant Molina later stated that he had consumed "a large amount of alcohol" that evening and that he "just knew I couldn't drive."

34. Defendant Molina also admitted to responding officers that both he and Tatiana had been "drunk" that evening.

35. At the time Defendant Molina operated the vehicle with Tatiana as his passenger, his driver's license was suspended.

36. At the time Defendant Molina operated the vehicle with Tatiana as his passenger, the vehicle displayed fictitious Colorado license plate CSDH39.

**37.** The CSDH39 plate did not belong to Defendant Molina's Suzuki XL7 and instead belonged to a vehicle owned by Erica Molina.

**38.** At the time Defendant Molina operated the vehicle with Tatiana as his passenger, Defendant Molina was on active probation for a prior DUI conviction in El Paso County, Case No. 2022T002864, entered March 15, 2022.

**39.** Defendant Molina knew or should have known that he was not legally permitted to operate a motor vehicle under the conditions existing on July 4, 2024.

**40.** Defendant Molina knew or should have known that driving after consuming alcohol, while suspended, while on DUI probation, and while transporting a passenger created a serious risk of injury or death.

**41.** At the time of the drive, Defendant Molina's vehicle contained an open bottle of Crown Royal Blackberry whiskey on the passenger-side floorboard.

**42.** At the time of the drive, Defendant Molina's vehicle contained an open bag of marijuana on the front passenger seat.

**43.** The interior door handle for the front passenger door was broken.

**44.** Defendant Molina knew or should have known of the condition of his vehicle, including the broken interior door handle.

**45.** Despite his impairment, suspended license, probationary status, fictitious plate, open alcohol, marijuana, and the unsafe condition of the vehicle, Defendant Molina chose to operate the vehicle with Tatiana as his passenger.

**The Drive, Argument, and Fatal Injury**

**46.** While driving, Defendant Molina stopped at a church along the route because, according to his own account, he needed to "collect himself" due to his alcohol consumption.

**47.** Defendant Molina's stop at the church confirmed that he knew or appreciated that his alcohol consumption affected his ability to safely drive.

**48.** Despite that knowledge, Defendant Molina resumed driving with Tatiana as his passenger.

**49.** After Defendant Molina resumed driving, an argument occurred between Defendant Molina and Tatiana.

**50.** During the argument, Defendant Molina knocked Tatiana's cell phone from the vehicle.

**51.** Defendant Molina's conduct during the argument escalated the danger to Tatiana, distracted from safe driving, and interfered with Tatiana's ability to communicate or seek help.

**52.** At approximately 10:32 p.m., Defendant Molina's vehicle was traveling on Fountain Mesa Road near Grand Peak Road in Fountain, Colorado.

**53.** At that time, Defendant Molina's vehicle was traveling approximately 35 to 40 miles per hour.

**54.** While the vehicle was moving at approximately 35 to 40 miles per hour, Tatiana exited, fell, or was ejected from the vehicle and struck the roadway.

**55.** Plaintiffs allege, on information and belief, that Defendant Molina's impaired driving, decision to continue operating the vehicle after recognizing his impairment, argument with Tatiana, conduct in knocking Tatiana's phone from the vehicle, operation of a vehicle with a broken interior passenger-door handle, and failure to stop or otherwise protect his passenger caused or contributed to the circumstances under which Tatiana exited, fell, or was ejected from the moving vehicle.

**56.** Tatiana sustained catastrophic blunt force trauma.

**57.** Tatiana's skull was fractured in numerous places, including a basilar hinge fracture and comminuted fracturing of the parietal and occipital regions.

**58.** Tatiana suffered subdural and subarachnoid hemorrhage and cortical contusions.

**59.** Tatiana also sustained extensive abrasions, including abrasions to her back, scapular region, lower back, right arm, and forearm.

**60.** Tatiana lay unconscious on Fountain Mesa Road, bleeding from the back of her head, both ears, and her nose.

**61.** Civilian bystanders, including Jeremy Shiner Hicks, discovered Tatiana and began CPR while waiting for emergency services to arrive.

**62.** After the incident, Defendant Molina drove approximately one block farther from the scene and stopped near Treasure Trail Circle with his vehicle's headlights turned off.

**63.** Life-saving measures were performed.

**64.** Life-saving measures were ceased at approximately 11:11 p.m. on July 4, 2024.

10

**65.** Tatiana Isabel Llanos was pronounced dead in the early hours of July 5, 2024.

**66.** The El Paso County Coroner certified the cause of death as blunt force head trauma.

**Fountain Police Department Response and Individual Officer Conduct**

**67.** Fountain Police Department officers responded to the scene and opened FPD Case Number 2024-00001513.

**68.** Defendant Corporal Moore served as an initial responding case officer.

**69.** Defendant Sergeant Alan L. Smith served as the patrol supervisor.

**70.** Defendant Detective Sergeant Cristiani supervised aspects of the investigation into Tatiana's death.

**71.** Defendant Detective Tori Smith served as the lead detective assigned to investigate Tatiana's death.

**72.** Defendant Officer Fouts made first contact with Defendant Molina at or near Molina's vehicle near Treasure Trail Circle.

**73.** Upon approaching Molina, Defendant Fouts documented: "I could smell a strong odor of an alcoholic beverage coming from his breathe and person while I was approximately one foot away from him."

**74.** Other FPD officers and supervisors observed or documented that Defendant Molina appeared intoxicated when first contacted.

**75.** Defendant Molina voluntarily stated to responding officers that both he and Tatiana had been "drunk" that evening.

11

**76.** Defendant Molina was known or readily identifiable as a suspended driver and as a person on active DUI probation.

**77.** Defendant Molina's vehicle contained open alcohol and marijuana.

**78.** Despite those facts, Defendant Fouts did not administer Standard Field Sobriety Tests to Defendant Molina.

**79.** No FPD officer administered Standard Field Sobriety Tests to Defendant Molina that evening.

**80.** No FPD officer arrested Defendant Molina that evening.

**81.** No FPD officer promptly obtained evidence sufficient to preserve Defendant Molina's level of intoxication at or near the time he operated the vehicle and Tatiana sustained fatal injuries.

**82.** Defendant Detective Sergeant Cristiani sought a search warrant for a blood draw from Defendant Molina.

**83.** Although a warrant was obtained and executed, the blood draw was not obtained until more than six hours after the incident.

**84.** Because of the delay, Plaintiffs allege that critical evidence of Defendant Molina's intoxication metabolized before the blood draw occurred.

**85.** The Colorado Bureau of Investigation later reported an ethanol result of 0.023 +/- 0.001 g/100 mL.

**86.** Defendant Detective Smith later cited the blood result as a reason for not moving forward with criminal charges.

**87.** Defendant Detective Smith acknowledged in writing: "there were not SFST's conducted at the scene by the patrol cops, the only hard evidence to prove DUI we had was his statement and that is unfortunately not enough to win a DUI case."

**88.** On information and belief, a District Attorney responded to the scene on the night of July 4, 2024, and at or near the scene agreed that no charges would be filed against Defendant Molina.

**89.** On September 17, 2024, the Fountain Police Department submitted the completed case to the El Paso County District Attorney's Office.

**90.** The District Attorney determined that no charges would be filed and characterized the incident as "a tragic accident."

**91.** No charges were pursued against Defendant Molina for DUI, vehicular homicide, reckless endangerment, driving with a suspended license, fictitious license plates, open container, or violation of DUI probation.

**92.** When Plaintiff Jose Llanos contacted Defendant Detective Smith seeking answers, Defendant Detective Smith told him that Defendant Molina's actions "did not cause the death of your daughter sir, and he also lost his friend."

**93.** On January 28, 2025, the Fountain Police Department closed the case with a finding of "no probable cause."

13

**94.** Plaintiffs allege that the individual officer Defendants' actions and omissions foreseeably impaired the preservation of evidence, denied Plaintiffs a meaningful and impartial investigation, and foreclosed ordinary law-enforcement accountability for Tatiana's death.

**95.** Plaintiffs allege that the individual officer Defendants' conduct was not merely negligent, but reflected deliberate, reckless, and conscience-shocking disregard of obvious facts showing that Defendant Molina was impaired, unlawfully driving, and responsible for circumstances that caused or contributed to Tatiana's death.

**Defendant-Specific Allegations**

**96.** Defendant Fouts personally observed Defendant Molina shortly after the incident, documented a strong odor of alcohol, and failed to administer SFSTs or otherwise preserve immediate evidence of impairment.

**97.** Defendant Moore, as an initial responding case officer, failed to ensure that readily available evidence of Defendant Molina's impairment and unlawful driving was promptly preserved and meaningfully investigated.

**98.** Defendant Alan L. Smith, as patrol supervisor, failed to supervise the response in a manner that ensured SFSTs, arrest consideration, timely evidence preservation, and ordinary impaired-driver fatality protocols were followed.

**99.** Defendant Cristiani, as detective sergeant and supervisor of the investigation, sought a blood-draw warrant but failed to ensure that the draw occurred promptly enough to preserve critical evidence of intoxication near the time of driving and fatal injury.

14

**100.** Defendant Tori Smith, as lead detective, relied on the absence of SFSTs and the delayed blood result to justify non-prosecution, failed to correct or remedy the investigative failures, and communicated to Plaintiff Jose Llanos that Molina's actions did not cause Tatiana's death.

**101.** Each individual officer Defendant knew or should have known that failing to promptly investigate and preserve evidence in a suspected impaired-driving fatality would foreseeably impair the truth-seeking process, deny meaningful accountability, and compound the harm to Tatiana's surviving family.

**102.** Plaintiffs allege that the individual officer Defendants' collective and individual conduct caused constitutional injury separate from the physical injury inflicted by Molina, including deprivation of equal protection, deprivation of substantive due process, and interference with Plaintiffs' protected familial interests and access to meaningful governmental protection on equal terms.

**Municipal Policy, Custom, Failure to Train, and Ratification**

**103.** Plaintiffs allege, on information and belief, that the investigative failures in this case were not isolated mistakes, but resulted from the City of Fountain's policies, customs, practices, failures of training or supervision, and ratification.

**104.** The City of Fountain, acting through the Fountain Police Department and its policymakers, maintained or permitted deficient practices concerning investigations of vehicular fatalities involving suspected impaired drivers.

15

**105.** Those deficient practices included the failure to require or ensure that officers promptly administer Standard Field Sobriety Tests when a driver involved in a fatality displays obvious signs of intoxication.

**106.** Those deficient practices included the failure to require or ensure timely blood draws in suspected impaired-driving fatality investigations.

**107.** Those deficient practices included the failure to ensure that officers preserve readily available evidence of impairment before alcohol metabolizes.

**108.** Those deficient practices included the failure to train and supervise officers regarding investigation of vehicular fatalities involving suspected impairment, suspended drivers, open containers, fictitious plates, and DUI probationers.

**109.** Those deficient practices included permitting supervisory personnel to close or submit fatality investigations without ensuring that obvious and available evidence had been collected.

**110.** Plaintiffs allege, on information and belief, that the City of Fountain and its policymakers knew or should have known that failure to train, supervise, and discipline officers concerning suspected impaired-driving fatality investigations would foreseeably result in constitutional violations and unequal law-enforcement treatment.

**111.** Plaintiffs allege, on information and belief, that the need for training and supervision in suspected impaired-driving fatality investigations was obvious because officers routinely encounter impaired drivers, are expected to preserve time-sensitive intoxication evidence, and know that delay can destroy or materially weaken evidence of impairment.

16

**112.** Plaintiffs allege, on information and belief, that the City of Fountain failed to discipline, correct, or remediate the officers' conduct after Tatiana's death.

**113.** Plaintiffs allege, on information and belief, that the City ratified the conduct of the individual officer Defendants by accepting, approving, or failing to correct the investigative failures and by allowing the case to close with a finding of "no probable cause" despite obvious evidence requiring further investigation.

**114.** Plaintiffs allege, on information and belief, that the City's policies, customs, failures to train or supervise, and ratification were moving forces behind the constitutional violations alleged in this Complaint.

**115.** Plaintiffs will seek discovery regarding prior Fountain Police Department impaired-driving fatality investigations, DUI investigations, blood-draw timing, SFST practices, internal policies, training materials, supervisory review, discipline, and case-closure practices.

## CLAIMS FOR RELIEF

### Count One: Wrongful Death Against Defendant Molina

**116.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

**117.** Defendant Molina owed Tatiana a duty to operate his vehicle with reasonable care.

**118.** Defendant Molina owed Tatiana a duty not to operate a vehicle while impaired or under the influence of alcohol.

17

**119.** Defendant Molina owed Tatiana a duty not to operate a vehicle while his license was suspended.

**120.** Defendant Molina owed Tatiana a duty not to operate a vehicle under conditions he knew or should have known were unsafe.

**121.** Defendant Molina breached those duties by operating the vehicle after consuming alcohol, while impaired, while suspended, while on DUI probation, while displaying fictitious plates, with open alcohol and marijuana in the vehicle, with a broken interior passenger-door handle, and while engaging in conduct that escalated danger inside the vehicle.

**122.** Defendant Molina's negligent, reckless, willful, and wanton conduct caused or contributed to the circumstances in which Tatiana exited, fell, or was ejected from the moving vehicle.

**123.** Defendant Molina's conduct was a direct and proximate cause of Tatiana's fatal injuries and death.

**124.** Plaintiffs Jose Martin Llanos and Erica Isabel Llanos suffered damages recoverable under Colorado law, including grief, sorrow, loss of companionship, loss of comfort, loss of society, loss of affection, funeral and cremation expenses, and other economic and non-economic losses.

### Count Two: Negligence and Negligence Per Se Against Defendant Molina

**125.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

**126.** Defendant Molina owed Tatiana duties of reasonable care as the operator of a motor vehicle and as the person who undertook to transport her as a passenger.

**127.** Defendant Molina violated Colorado statutes and traffic-safety laws, including laws prohibiting or regulating driving while impaired or under the influence of alcohol, driving with a suspended license, fictitious plates, open alcohol containers, and related unsafe conduct.

**128.** Those laws were intended to protect passengers such as Tatiana from the type of harm that occurred here.

**129.** Defendant Molina's violations of those statutes and safety rules constituted negligence per se or evidence of negligence.

**130.** Defendant Molina's negligence and negligence per se caused or contributed to Tatiana's injuries and death.

**131.** Plaintiffs seek all damages recoverable under Colorado law.

### Count Three: Survival Claim by the Estate Against Defendant Molina

**132.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

**133.** Before her death, Tatiana sustained catastrophic physical injuries, including blunt force head trauma, skull fractures, hemorrhage, contusions, abrasions, bleeding, and other injuries.

**134.** On information and belief, Tatiana experienced conscious pain, suffering, fear, terror, or loss of enjoyment of life before death, to the extent such damages are recoverable under Colorado law.

19

**135.** The Estate asserts all claims and damages belonging to Tatiana that survived her death, to the extent permitted by Colorado law.

**136.** Plaintiffs plead this claim subject to confirmation of estate capacity, appointment of the proper personal representative, and the damages recoverable under Colorado law.

**Claim Four: 42 U.S.C. § 1983 — Fourteenth Amendment Substantive Due Process / State-Created Danger Against Individual Officer Defendants**

**137.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

**138.** At all relevant times, Defendants Moore, Fouts, Alan L. Smith, Cristiani, and Tori Smith acted under color of state law.

**139.** Plaintiffs allege that the individual officer Defendants, through affirmative conduct and deliberate decisions, created, increased, or prolonged danger to Tatiana's protected interests and to Plaintiffs' protected familial interests by failing to preserve obvious and time-sensitive evidence in a suspected impaired-driving fatality, by permitting Molina to avoid ordinary impaired-driving accountability despite evidence of intoxication and unlawful driving, and by causing the investigation to proceed in a manner that foreseeably foreclosed meaningful accountability.

**140.** Plaintiffs allege that Tatiana and her immediate family were members of a limited and specifically definable group: the victim and surviving family of a specific fatal incident involving a specific suspected impaired driver known to the individual officer Defendants.

**141.** The individual officer Defendants' conduct placed Plaintiffs at substantial risk of serious, immediate, and proximate constitutional harm, including denial of meaningful and

impartial law-enforcement protection, destruction or loss of critical evidence, and impairment of Plaintiffs' protected familial and dignity interests.

142. The risk was obvious or known because Defendant Molina displayed signs of intoxication, admitted alcohol consumption, had been driving on a suspended license, had open alcohol and marijuana in the vehicle, was on DUI probation, and had been involved in a fatal incident.

143. The individual officer Defendants acted recklessly and in conscious disregard of that obvious risk by failing to conduct SFSTs, failing to promptly obtain intoxication evidence, failing to arrest or meaningfully investigate Molina, and allowing investigative omissions to become the basis for closing the case.

144. Viewed in total, the individual officer Defendants' conduct shocks the conscience because it involved a fatality, obvious evidence of intoxication and unlawful driving, time-sensitive evidence, and a sequence of official decisions that foreseeably ensured that Molina would not be held accountable.

145. As a direct and proximate result of the individual officer Defendants' conduct, Plaintiffs suffered constitutional injuries and damages recoverable under 42 U.S.C. § 1983.

### Count Five: 42 U.S.C. § 1983 — Fourteenth Amendment Substantive Due Process / Familial Association Against Individual Officer Defendants

146. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

147. Plaintiffs Jose Martin Llanos and Erica Isabel Llanos had a constitutionally protected liberty interest in their familial relationship with their daughter, Tatiana Isabel Llanos.

21

**148.** The individual officer Defendants knew that Tatiana had died and that Plaintiffs were her parents and surviving immediate family.

**149.** Plaintiffs allege that the individual officer Defendants' conduct, including the failure to preserve evidence, failure to conduct a meaningful investigation, and dismissive treatment of Plaintiffs' efforts to obtain answers, constituted deliberate, reckless, and conscience-shocking interference with Plaintiffs' protected familial interests.

**150.** Defendant Detective Smith's statement to Plaintiff Jose Llanos that Molina's actions "did not cause the death of your daughter sir, and he also lost his friend" reflected the predetermined, dismissive, and conscience-shocking nature of the investigation and official response.

**151.** As a direct and proximate result of the individual officer Defendants' conduct, Plaintiffs suffered damages recoverable under 42 U.S.C. § 1983.

**Count Six: 42 U.S.C. § 1983 — Fourteenth Amendment Equal Protection / Selective Non-Enforcement Against Individual Officer Defendants**

**152.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

**153.** The Equal Protection Clause requires state actors to provide equal protection of the laws and prohibits irrational, arbitrary, bad-faith, or intentionally discriminatory selective non-enforcement.

**154.** Defendant Molina received treatment materially more favorable than similarly situated suspected impaired drivers involved in fatal or serious-injury crashes would ordinarily receive.

22

**155.** Despite obvious evidence of impairment and unlawful driving, the individual officer Defendants failed to administer SFSTs, failed to promptly preserve intoxication evidence, failed to arrest Molina, failed to pursue available investigative steps, and allowed the absence of evidence caused by their own failures to justify non-enforcement.

**156.** Plaintiffs allege, on information and belief, that similarly situated suspected impaired drivers involved in fatal crashes are ordinarily subjected to SFSTs, prompt blood draws, arrest consideration, and full investigation.

**157.** Plaintiffs allege, on information and belief, that the individual officer Defendants' selective non-enforcement was irrational, arbitrary, in bad faith, and motivated by an improper purpose, including a desire to protect Molina from accountability or to avoid scrutiny of the department's investigative failures.

**158.** Plaintiffs further allege that the dismissive treatment of the Llanos family and the failure to treat Tatiana's death with the seriousness ordinarily afforded to fatal impaired-driving investigations denied Plaintiffs equal protection of the laws.

**159.** As a direct and proximate result of the individual officer Defendants' conduct, Plaintiffs suffered damages recoverable under 42 U.S.C. § 1983.

**Count Seven: 42 U.S.C. § 1983 — Municipal Liability Against Defendant City of Fountain**

**160.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth here.

**161.** Defendant City of Fountain is liable under 42 U.S.C. § 1983 because the constitutional violations alleged above were caused by municipal policies, customs, practices, failures of training or supervision, final policymaker decisions, or ratification.

**162.** The City maintained or permitted a policy, custom, or practice of failing to require officers to administer SFSTs when suspected impaired drivers involved in fatalities display obvious signs of intoxication.

**163.** The City maintained or permitted a policy, custom, or practice of failing to ensure timely blood draws in suspected impaired-driving fatality investigations.

**164.** The City maintained or permitted a policy, custom, or practice of allowing officers and supervisors to close or submit fatality investigations without preserving obvious, time-sensitive evidence.

**165.** The City failed to adequately train and supervise officers regarding suspected impaired-driving fatality investigations, including SFSTs, timely blood draws, evidence preservation, probable cause determinations, and treatment of victims' families.

**166.** The City knew or should have known that the failure to train and supervise officers in these areas would result in constitutional violations and unequal law-enforcement treatment.

**167.** The need for such training and supervision was obvious because evidence of intoxication is time-sensitive and officers routinely encounter impaired-driving investigations.

**168.** The City ratified the individual officer Defendants' conduct by failing to discipline, correct, remediate, or repudiate the investigative failures alleged in this Complaint.

**169.** The City's policies, customs, practices, failures of training or supervision, and ratification were moving forces behind Plaintiffs' constitutional injuries.

**170.** As a direct and proximate result of the City's conduct, Plaintiffs suffered damages recoverable under 42 U.S.C. § 1983.

## DAMAGES

**171.** Plaintiffs seek all damages available under federal and Colorado law, including but not limited to:

a. Wrongful death damages;

b. Economic damages;

c. Non-economic damages;

d. Funeral and cremation expenses;

e. Loss of companionship, comfort, society, affection, and support;

f. Estate damages, to the extent recoverable by law;

g. Constitutional damages under 42 U.S.C. § 1983;

h. Prejudgment and post-judgment interest;

i. Costs of suit;

j. Reasonable attorneys' fees under 42 U.S.C. § 1988 for the federal claims;

k. Exemplary or punitive damages against individual Defendants at the time and in the manner permitted by law; and

l. Such other relief as the Court deems just and proper.

172. Plaintiffs reserve the right to seek leave to amend this Complaint based on discovery, including evidence concerning Defendant Molina's impairment, vehicle condition, the mechanics of Tatiana's exit from the vehicle, FPD policies and practices, prior similar incidents, training materials, supervision, discipline, ratification, and communications with the District Attorney's Office.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment enter in their favor and against Defendants, and that the Court award the following relief:

A. Compensatory damages in an amount to be determined by the jury;

B. Wrongful death damages recoverable by Plaintiffs Jose Martin Llanos and Erica Isabel Llanos under Colorado law;

C. Damages recoverable by the Estate of Tatiana Isabel Llanos, to the extent permitted by Colorado law;

D. Damages for constitutional injuries recoverable under 42 U.S.C. § 1983;

E. Funeral, burial, cremation, and related expenses;

F. Economic losses and non-economic losses recoverable under federal and state law;

G. Punitive damages against the individual Defendants to the extent permitted by law;

H. Exemplary damages against Defendant Molina at the time and in the manner permitted by Colorado law;

I. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988 for the federal claims;

J. Prejudgment and post-judgment interest as allowed by law;

K. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted this 6th day of July 2026.

s/ Jenipher R. Jones
Jenipher R. Jones, Esq.
110 16th Street
Suite 1400
#1001
Denver, Colorado 80202
Telephone: 720.459.9333 / 720.380.4408
Fax: 720.796.9408
E-mail: jenipherj@forthepeoplelegal.com

*Counsel for Plaintiffs*

27